UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

SHEILA SINER BROUSSARD                    CIVIL ACTION NO. 6:13-cv-02239

VERSUS                                    JUDGE HAIK

COMMISSIONER OF THE                       MAGISTRATE JUDGE HANNA
SOCIAL SECURITY
ADMINISTRATION


## REPORT  AND  RECOMMENDATION


Before this Court is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable

law, it is recommended that the Commissioner's decision be affirmed.

### BACKGROUND

The claimant, Sheila Siner Broussard, was born on March 2, 1966.[1]  She has

a twelfth-grade education.[2]  She previously worked in the food department of a

convenience store[3] and as the manager of a school cafeteria.[4]  She applied for

disability insurance benefits on April 5, 2010, contending that her disability began on

---

[1]      Rec. Doc. 11-1 at 36.

[2]      Rec. Doc. 11-1 at 38.

[3]      Rec. Doc. 11-1 at 38.

[4]      Rec. Doc. 11-1 at 108, 116.

November 24, 2008[5] and that her disabling conditions are fibromyalgia as well as back and neck pain.[6]  When her disability allegedly began, Ms. Broussard was 42 years old.  She was almost 45 years old when the hearing was held, and she is now 48 years old.

A careful review of the record reveals that the alleged onset date of Ms. Broussard's disability corresponds to a date on which she was allegedly involved in a motor vehicle accident.[7]  Ms. Broussard stopped working on December 11, 2008, and she was out on sick leave for the remainder of the 2008-2009 school year.[8]  In February 2009, she was allegedly involved in another motor vehicle accident.[9]  When school started for the 2009-2010 school year, she was out on sick leave until September 9, 2009, at which time her sick leave and extended sick leave days were exhausted.[10]  According to her hearing testimony, she then received disability payments in lieu of work for a whole year but went back to work in November 2010

---

[5]     Rec. Doc. 11-1 at 90.

[6]     Rec. Doc. 11-1 at 106.

[7]     Rec. Doc. 11-1 at 177, 180-181.

[8]     Rec. Doc. 11-1 at 134.

[9]     Rec. Doc. 11-1 at 177.

[10]    Rec. Doc. 11-1 at 134.

and was working on a trial basis at the time of the hearing.[11]  She contended at that time that she was unable to perform her job duties.[12]  Her attempt to return to work presumably was not successful since she stated in her brief that she is continuing to receive "my disability retirement from the Lafayette Parish School Board."[13]

The record shows that Ms. Broussard presented to neurologist Dr. Fabian Lugo in early 2008 for an evaluation of migraine headaches and vision problems.  Although Dr. Lugo found that the etiology of her bilateral optic neuropathy was unclear, he ruled out multiple sclerosis.[14]

From fall 2008 through spring 2010, Ms. Broussard treated with Dr. Gerard Williams.  There is no mention in Dr. Williams's records of either alleged automobile accident.  Ms. Broussard's first visit with Dr. Williams was for an "initial evaluation of pain" on September 29, 2008, before the first alleged accident.[15]  Dr. Williams's assessment included muscle pain, inflammation of the muscles, and fatigue.  On October 21, 2008, he noted that he "will need to consider fibromyalgia."[16]

---

[11]     Rec. Doc. 11-1 at 41-43.

[12]     Rec. Doc. 11-1 at 43-48.

[13]     Rec. Doc. 23 at 3.

[14]     Rec. Doc. 11-1 at 161-164.

[15]     Rec. Doc. 11-1 at 189-190.

[16]     Rec. Doc. 11-1 at 192.

On September 9, 2009, Ms. Broussard complained to Dr. Williams of fatigue, headaches, insomnia, generalized pain and discomfort throughout her body, sadness, and depression.  Dr. Williams diagnosed her with fibromyalgia, insomnia, depression, and chronic pain, and he prescribed medications.[17]

On January 7, 2010, Ms. Broussard's chief complaints were joint pain and tenderness, migraine headaches, and cold symptoms.  Dr. Williams's assessment was fibromyalgia.   The medications he prescribed included pain medication and antidepressants.[18]

Ms. Broussard followed up with Dr. Williams on January 28, 2010.  He diagnosed her with headaches, fibromyalgia, physiological malfunction arising from mental factors, unspecified transient mental disorder, and blurred vision.[19]  There is no indication that Dr. Williams referred Ms. Broussard to a mental health professional at that time.

On March 2, 2010, based on Ms. Broussard's complaints of chronic pain, anxiety, fatigue, pallor, and stress, Dr. Williams again diagnosed fibromyalgia and

---

[17]      Rec. Doc. 11-1 at 201-213.

[18]      Rec. Doc. 11-1 at 214-216.

[19]      Rec. Doc. 11-1 at 217-219.

insomnia, and he referred Ms. Broussard to a psychiatrist.[20] But the record contains no evidence in the form of treatment notes or documents indicating that Ms. Broussard ever actually saw a psychiatrist.

Ms. Broussard saw Dr. Williams again on April 5, 2010, continuing to complain of joint pain and tenderness that she described as constant and severe. At that time, Dr. Williams was prescribing Trazadone (an antidepressant), Percocet (for pain), Lyrica (for the treatment of fibromyalgia), and Gabapentin (for the treatment of nerve pain). He increased the dosage of her Lyrica and referred her to Dr. James Lipstate, a specialist in the fields of rheumatology and endocrinology.[21]

On April 26, 2010, Ms. Broussard again saw Dr. Williams, complaining of pain, fatigue, and depression. Dr. Williams prescribed Bupropion, an antidepressant also known as Wellbutrin,[22] and advised Ms. Broussard to keep her appointments with Dr. Lipstate and the psychiatrist.[23]

Dr. Williams's notes contain no reference to the motor vehicle accidents that provide the onset date of her alleged disability, no opinion that Ms. Broussard is

---

[20]     Rec. Doc. 11-1 at 220-222.

[21]     Rec. Doc. 11-1 at 224-225.

[22]     MedlinePlus, www.nlm.nih.gov/medlineplus/druginfo/meds/a695033.html#why (last visited November 4, 2014).

[23]     Rec. Doc. 11-1 at 227-229.

incapable of working, and no restrictions or limitations on the activities that she can perform either at work or during her leisure time.

On March 13, 2009, Ms. Broussard saw Dr. F. Allen Johnston, an orthopedic surgeon, with complaints of neck and back pain.  Although the treatment notes from this visit are incomplete (there is no page one), she apparently reported two injuries to Dr. Johnston – a "first" automobile accident on November 24, 2008, and a second injury in February 2009.  She reported that her neck symptoms were beginning to improve with physical therapy after the first accident but worsened after the second one.  She also reported increased low back pain with numbness, tingling, and urinary urgency and frequency following the second injury.  Dr. Johnston's impressions were chronic neck pain and spasm associated with a C4-5 disc herniation as well as chronic low back pain with facet arthrosis at L3-4 and L5-S1.  They discussed cervical epidural injections, and he prescribed Elavil (for migraine headaches), Lortab (for pain), and a home TENS unit.[24]

Ms. Broussard returned to Dr. Johnson on April 24, 2009.  He stated that it was five months since her injury (which corresponds to the November 2008 date) and also stated that he thought she was a candidate for cervical epidural injections.  Due to Ms. Broussard's fear of the injections, however, he continued with conservative care in

---

[24]      Rec. Doc. 11-1 at 180-181.

the form of physical therapy, a TENS unit, anti-inflammatory medication, and pain medication.  Dr. Johnston also recommended certain restrictions on her work.  With regard to her cervical injury, he recommended that she should avoid prolonged looking up or down, that she should avoid working in tight spaces forcing her to turn her neck rather than her body, and that she should avoid wearing hard hats or helmets. With regard to her low back, Dr. Johnson recommended that Ms. Broussard should avoid repetitive bending or twisting at the waist, lifting of more than 20 pounds, prolonged sitting or standing without changing positions, working at unprotected heights, and walking on uneven ground.[25]  When Ms. Broussard returned to see Dr. Johnston on June 12, 2009, he restricted her to light duty work and adjusted her medications.[26]

When Ms. Broussard returned to see Dr. Johnston on July 31, 2009, she stated that she was unable to afford the recommended injections, and he "[o]nce again informed her that we are not the type of clinic that would provide long term narcotic medications for chronic cervical or lumbar pain."  He also stated that she has C4-5

---

[25]     Rec. Doc. 11-1 at 182.

[26]     Rec. Doc. 11-1 at 183.

disc pathology for which he recommended epidural injections and/or facet injections. He again adjusted her pain medications[27]

On November 28, 2009, Ms. Broussard reported to Dr. Johnston that her neck pain was improving, and "[s]he states that she is starting to realize that she is able to perform some of her usual activities with a little less discomfort than she used to and is able to perform certain activities a little longer before experiencing pain."[28]

On February 12, 2010, Ms. Broussard told Dr. Johnston that her neck pain was better but her low back pain was continuing.  Dr. Johnston recommended lumbar facet injections bilaterally at L3-4 and L5-S1.[29]

On April 16, 2010, Ms. Broussard stated that the pain was continuing in her neck and low back.  No injections had yet been scheduled.[30]

On April 6, 2010, Ms. Broussard reported to psychologist Douglas DeMahy that she has neck and back pain resulting from automobile accidents in 2008 and 2009 as well as fibromyalgia.[31]

---

[27]    Rec. Doc. 11-1 at 184.

[28]    Rec. Doc. 11-1 at 185.

[29]    Rec. Doc. 11-1 at 186.

[30]    Rec. Doc. 11-1 at 187.

[31]    Rec. Doc. 11-1 at 177.

On October 28, 2010,[32] Ms. Broussard saw Dr. Jody Rosson, a board certified internist and pulmonary disease specialist.  She complained about shortness of breath on exertion over the past few years, which allegedly had worsened over the past year.  Dr. Rosson performed tests that showed no evidence of obstruction or restriction.  He recommended further testing, which Ms. Broussard declined on the basis that she could not afford it.  Dr. Rosson prescribed Advair and Albuterol.  On January 4, 2011, Dr. Rosson confirmed that he had diagnosed Ms. Broussard with pulmonary emphysema.[33]  However, on January 11, 2011, Dr. Rosson noted that Ms. Broussard's symptoms "appear greatly out of proportion to her objective findings."[34]  Upon examination, he found that Ms. Broussard had good air movement bilaterally with a normal expiratory phase and no wheezes.  He noted that Ms. Broussard was continuing to smoke a pack of cigarettes per day.  He also noted that Ms. Broussard had recently been diagnosed with gastro-esophageal reflux, which "could be a significant component of her complaints, and can cause symptoms of dyspnea."[35]

---

[32]     Rec. Doc. 11-1 at 243-244.

[33]     Rec. Doc. 11-1 at 239.

[34]     Rec. Doc. 11-1 at 241.

[35]     Rec. Doc. 11-1 at 241.

At the request of Dr. Williams, Ms. Broussard was seen by Dr. James Lipstate, a rheumatologist and endocrinologist, on May 24, 2010.  According to Dr. Lipstate, Ms. Broussard did not relate her pain complaints to her automobile accident, and he found her symptoms to be consistent with fibromyalgia.  He prescribed medication for that condition.[36]  Ms. Broussard saw Dr. Lipstate again on June 14, 2010.[37] Because she did not tolerate the first medication he prescribed, he prescribed another. He also noted that he obtained x-rays of her hips because of tenderness but the results were normal.[38]  Dr. Lipstate again adjusted her medications on August 11, 2010.[39] Ms. Broussard followed up with Dr. Lipstate on January 17, 2011.[40]  On April 30, 2012, Dr. Lipstate confirmed that he had diagnosed Ms. Broussard with systemic lupus/Sjogren's syndrome/fibromyalgia.  He stated that this condition was being managed with Prednisone and Hydroxychloroquine.[41]

---

[36]     Rec. Doc. 11-1 at 252-253.

[37]     Rec. Doc. 11-1 at 251.

[38]     Rec. Doc. 11-1 at 251.

[39]     Rec. Doc. 11-1 at 250.

[40]     Rec. Doc. 11-1 at 248.

[41]     Rec. Doc. 11-1 at 14.

On June 11, 2010, it was determined that Ms. Broussard is not disabled.[42]  She requested a hearing,[43] which was held on January 10, 2011.[44]  The ALJ issued an unfavorable ruling on March 7, 2011.[45]  Ms. Broussard requested review by the Appeals Council, but her request was denied.[46]  Therefore, the ALJ's ruling is the Commissioner's final decision.  In July 2013, Ms. Broussard instituted this lawsuit, seeking judicial review of the Commissioner's adverse decision.[47]  Ms. Broussard is not represented by legal counsel, and she did not timely file a brief in this matter.  Out of an abundance of caution, however, the undersigned ruled Ms. Broussard into court, gave her an opportunity to find legal counsel,[48] and then ordered her to file a brief setting forth the reasons why she contests the Commissioner's decision.[49]  Ms. Broussard complied with the orders.  Ms. Broussard now argues that the Commissioner erred in failing to find that she is disabled.

---

[42]     Rec. Doc. 11-1 at 56, 62.

[43]     Rec. Doc. 11-1 at 68.

[44]     Rec. Doc. 11-1 at 32-55.

[45]     Rec. Doc. 11-1 at 20-27.

[46]     Rec. Doc. 11-1 at 8.

[47]     Rec. Doc. 1.

[48]     Rec. Doc. 15.

[49]     Rec. Doc. 22.

## ASSIGNMENT OF ERRORS

Ms. Broussard contends that the Commissioner erred in finding her not disabled.  More specifically, she contends, first, that three of her treating physicians have stated that she cannot work.  The undersigned interprets this as an argument that her physicians' opinions were not given appropriate weight.  The undersigned will consider this contention along with Ms. Broussard's second contention, which is that she can no longer perform her past relevant work.  Third, Ms. Broussard claims that she has serious mental health issues with suicidal ideation due to chronic pain, including depression, which prevent her from working.  Fourth, she argues that she has chronic pain due to fibromyalgia, migraines, and back and neck problems, which prevent her from being able to work.  Fifth, she argues that she can now meet a listed impairment.  Sixth, she argues that the side effects of her medications preclude her from working.  Finally, she argues that she was not given an opportunity to be evaluated by a Social Security doctor.

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to determining whether the decision was supported by substantial evidence and whether the proper

legal standards were applied in reaching the decision.[50]   If the Commissioner's findings are supported by substantial evidence, they must be affirmed.[51]   Substantial evidence is more than a mere scintilla and less than a preponderance.[52]   A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.[53]   Finding substantial evidence requires scrutiny of the entire record as a whole.[54]   In applying this standard, the court may not reweigh the evidence or substitute its judgment for that of the Commissioner.[55]

A claimant seeking Social Security benefits bears the burden of proving that he or she is disabled.[56]   Disability is defined in the Social Security regulations as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

---

[50]     *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001); *Harris v. Apfel,* 209 F.3d 413, 417 (5th Cir. 2000).

[51]     *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[52]     *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[53]     *Boyd v. Apfel,* 239 F.3d at 704.

[54]     *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

[55]     *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d at 135.

[56]     *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005); *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992); *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990); *Fraga v. Bowen*, 810 F.2d 1296, 1301 (5th Cir. 1987).

12 months."[57]  Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit.[58]

The Commissioner uses a sequential five-step inquiry to determine whether a claimant is disabled.  At step one, an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings. At step two, an individual who does not have a severe impairment will not be found disabled.  At step three, an individual who meets or equals an impairment listed in the regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1 will be considered disabled without consideration of vocational factors.  If an individual is capable of performing the work he has done in the past, a finding of not disabled must be made at step four. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if the claimant can perform any other work at step five.[59]

---

[57]  42 U.S.C. § 423(d)(1)(A).

[58]  20 C.F.R. § 404.1572(a)-(b).

[59]  *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991), summarizing 20 C.F.R. § 404.1520(b)-(f). See, also, *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[60] by determining the most that the claimant can still do despite his physical and mental limitations based on all of the relevant evidence in the claimant's record.[61]  The claimant's residual functional capacity is used at step four to determine if the claimant can still do his past relevant work and at step five to determine whether the claimant can adjust to any other type work.[62]

The claimant bears the burden of proof on the first four steps.[63]  At the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[64]  This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[65]  If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to

---

[60]     20 C.F.R. § 404.1520(a)(4).

[61]     20 C.F.R. § 404.1545(a)(1).

[62]     20 C.F.R. § 404.1520(e).

[63]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[64]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[65]     *Fraga v. Bowen*, 810 F.2d at 1304.

rebut this finding.[66]  If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[67]

In this case, the Commissioner found, at step one, that the evidence was unclear as to whether Ms. Broussard had engaged in substantial gainful activity since her alleged disability onset date.[68]  The undersigned finds that the ALJ would have been justified in finding that Ms. Broussard was working at the substantial gainful activity level at the time of the hearing.  She testified that she was working from 6:00 a.m. to 1:00 p.m., five days per week, and earning a net salary of approximately $1,200 per month at that time.[69]  Since the evidence indicates that Ms. Broussard had been out of work for approximately two years on sick leave and disability benefits provided by her employer from December 2008 to November 2010 and was back at work only on a trial basis, however, it was appropriate for the ALJ give Ms. Broussard the benefit of the doubt and continue the sequential analysis rather than finding that Ms. Broussard's working at step one precluded a finding that she was disabled.

---

[66]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[67]     *Anthony v. Sullivan*, 954 F.2d at 293, citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988). See, also, 20 C.F.R. § 404.1520(a)(4).

[68]     Rec. Doc. 11-1 at 22.

[69]     Rec. Doc. 11-1 at 42.

-16-

At step two, the ALJ found that Ms. Broussard has the following severe impairments:  fibromyalgia, emphysema, and migraine headaches.[70]  This finding is supported by evidence in the record.

At step three, the ALJ found that Ms. Broussard does not have an impairment or a combination of impairments that meets or medically equals a listed impairment.[71]  Ms. Broussard disagrees with this finding.

The ALJ then found that Ms. Broussard retains the residual functional capacity to perform medium work.[72]  Ms. Broussard implicitly disagrees with this finding.

At step four, the ALJ found that Ms. Broussard is capable of performing her past work as a cafeteria manager, deli worker, and kitchen helper.[73]  Accordingly, the ALJ did not progress to step five.  Ms. Broussard disagrees with this finding.

**DISCUSSION**

Each of Ms. Broussard's arguments will be analyzed in turn.

**A.   THE WEIGHT GIVEN TO THE DOCTORS' OPINIONS AND WHETHER MS. BROUSSARD CAN PERFORM HER PAST RELEVANT WORK.**

---

[70]   Rec. Doc. 11-1 at 22.

[71]   Rec. Doc. 11-1 at 24.

[72]   Rec. Doc. 11-1 at 24.

[73]   Rec. Doc. 11-1 at 26.

Ms. Broussard argues that she can no longer perform her past relevant work and contends that three of her physicians are of the opinion that she can no longer work. She must bear the burden of proving that she can no longer perform her past work, but the evidence in the record does not satisfy that burden.

The ALJ has sole responsibility for determining the claimant's disability status.[74] Although a treating physician's opinions are not determinative, the opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight by the ALJ in determining disability.[75] In fact, when a treating physician's opinion regarding the nature and severity of an impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give that opinion controlling weight.[76] If an ALJ declines to give controlling weight to a treating doctor's opinion, he may give the opinion little or no weight – but only after showing good cause for doing so.[77] Good cause may be shown if the treating physician's opinion is conclusory, unsupported by medically

---

[74]    *Newton v. Apfel*, 209 F.3d at 455.

[75]    *Pineda v. Astrue*, 289 Fed. App'x 710, 712-713 (5th Cir. 2008), citing *Newton v. Apfel*, 209 F.3d at 455.

[76]    20 C.F.R. § 404.1527(c)(2). See, also, *Loza v. Apfel*, 219 F.3d at 393.

[77]    *Thibodeaux v. Astrue*, 324 Fed. App'x 440, 443-444 (5th Cir. 2009).

acceptable clinical laboratory diagnostic techniques, or is otherwise unsupported by the evidence.[78]  Before declining to give any weight to the opinions of a treating doctor, an ALJ must also consider the length of treatment by the physician, the frequency of his examination of the claimant, the nature and extent of the doctor-patient relationship, the support provided by other evidence, the consistency of the treating physician's opinion with the record, and the treating doctor's area of specialization, if any.[79]

Ms. Broussard contends that Dr. Johnston, Dr. Williams, and Dr. Lipstate are of the opinion that she cannot work.[80]  However, there is no support for that contention in the record.  Although Dr. Johnston recommended some limitations on Ms. Broussard's work activities and recommended that she be restricted to "light duty" work, the record contains no restriction on Ms. Broussard's work activities by Dr. Williams or by Dr. Lipstate.

Dr. Johnston treated Ms. Broussard only for back and neck injuries and did not treat her for her fibromyalgia, emphysema, or migraines.  He is, however, the only physician who opined on Ms. Broussard's functional capacity.  He stated that Ms.

---

[78]     *Thibodeaux v. Astrue*, 324 Fed. App'x at 443-444.

[79]     *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001); *Newton v. Apfel*, 209 F.3d at 456.

[80]     Rec. Doc. 23 at 1.

Broussard "is only capable of light duty, which includes avoiding repetitive bending and twisting, lifting no more than twenty pounds, no prolonged sitting or standing without changing positions [and] [n]o working at unprotected heights or walking on uneven ground."[81] The ALJ noted, in his ruling, that the *Dictionary of Occupational Titles* classifies the job of cafeteria manager as skilled, light work. Therefore, if Dr. Johnston's opinions were given governing weight and his recommendations were implemented, Ms. Broussard would be limited to performing light work, but she would remain capable of performing her past relevant work. Accordingly, the ALJ's finding at step four that Ms. Broussard remains capable of performing her past relevant work is supported by substantial evidence in the record.

Ms. Broussard contends that she can no longer perform the tasks necessary to her past relevant work, but she provides no specific examples of the type of things that she can no longer do. At the hearing, she complained about being short of breath and about the side effects of her medication.[82] But the record contains no complaints to her doctors about the side effects of her medication, and the objective tests concerning her pulmonary condition were not consistent with her complaints.[83] Dr.

---

[81]     Rec. Doc. 11-1 at 183.

[82]     Rec. Doc. 11-1 at 52.

[83]     Rec. Doc. 11-1 at 244.

-20-

Rosson stated that "[h]er symptoms of dyspnea appear greatly out of proportion to her objective findings."[84]   For this reason, the ALJ did not err in finding that Ms. Broussard is capable of performing her past relevant work as a cafeteria manager and therefore did not err in ruling that she is not disabled.

## B.   MENTAL HEALTH ISSUES.

Ms. Broussard argues that she has severe mental health problems, including depression and suicidal ideation, resulting from her attempt to cope with chronic pain. Her implicit contention is that these problems prevent her from working.  The record does not support this contention.  Dr. Williams diagnosed Ms. Broussard with depression, and he prescribed medications to treat that condition.  It was also his impression, on one date, that she was suffering with an unspecified transient mental disorder. Dr. Williams referred Ms. Broussard to a psychiatrist, Dr. Echols.  But there is no evidence in the record suggesting that Ms. Broussard ever saw Dr. Echols or any other psychiatrist.  The record does substantiate the fact that Ms. Broussard consulted with Dr. DeMahy, a psychologist, on a single date, April 6, 2010.  The notes from that session contain no reference to suicidal ideation.  Consistently, there is no reference to suicidal ideation in any of the other physicians' treatment notes.  Dr. DeMahy's diagnosis was adjustment disorder with mixed anxiety and depressed mood.  There

---

[84]      Rec. Doc. 11-1 at 241.

is no evidence that he changed Ms. Broussard's medication or prescribed any other therapies for her, and there is no evidence that Ms. Broussard ever saw Dr. DeMahy or any other mental health professional other than on that one occasion.

The ALJ concluded that Ms. Broussard's "depression does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere."[85]  This conclusion was based, at least in part, on the scant evidence of mental health treatment in the record.  The ALJ noted that Ms. Broussard "receives no treatment from a mental health professional."[86]  An ALJ may rely upon a lack of treatment as an indication of nondisability.[87]  Furthermore, "[i]t is well established that a claimant's. . . failure to seek treatment is a relevant factor to consider in determining the severity of an impairment and may be used in conjunction with the medical reports to discount complaints of disabling pain or other limitations."[88]  Accordingly, because his conclusion is supported by substantial evidence in the record, the ALJ did not err in concluding that Ms. Broussard does not have a severe mental health impairment.

---

[85]     Rec. Doc. 11-1 at 23.

[86]     Rec. Doc. 11-1 at 23.

[87]     *Doss v. Barnhart*, 137 Fed. App'x 689, 690 (5th Cir. 2005); *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990).

[88]     *Tate v. Colvin*, No. 13-6552, 2014 WL 4982662, at *18 (E.D. La. Oct. 6, 2014).

## C.   CHRONIC PAIN DUE TO FIBROMYALGIA, MIGRAINES, BACK INJURIES, AND NECK INJURIES.

Ms. Broussard's primary complaint is chronic pain.  Pain can constitute a disabling impairment,[89] but pain is disabling only when it is constant, unremitting, and wholly unresponsive to therapeutic treatment.[90]  Mild or moderate pain is not disabling.  Furthermore, subjective complaints, such as complaints of pain, must be corroborated by objective medical evidence.[91]  While an ALJ must take into account a claimant's subjective allegations of pain in determining residual functional capacity, the claimant must produce objective medical evidence of a condition that reasonably could be expected to produce the level of pain alleged.[92]  The mere existence of pain does not automatically create grounds for disability, and subjective evidence of pain does not take precedence over conflicting medical evidence.[93]  The absence of objective factors can justify the conclusion that a witness lacks credibility.[94]

---

[89]    *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Cook v. Heckler*, 750 F.2d 391, 395 (5th Cir. 1985).

[90]    *Falco v. Shalala,* 27 F.3d at 163; *Selders v. Sullivan*, 914 F.2d at 618-19.

[91]    *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001).

[92]    *Harper v. Sullivan*, 887 F.2d 92, 96 (5th Cir. 1989).

[93]    *Harper v. Sullivan*, 887 F.2d at 96.

[94]    *Dominguez v. Astrue*, 286 Fed. App'x 182, 187 (5th Cir. 2008), citing *Hollis v. Bowen*, 837 F.2d 1378, 1385 (5th Cir. 1988) (*per curiam*).

In this case, the record contains evidence that Ms. Broussard has conditions that can cause pain, i.e., migraines, fibromyalgia, and back and neck injuries.  Dr. Williams prescribed medications to treat the migraines and fibromyalgia, including pain medication.  Dr. Johnston treated her neck and back pain conservatively and recommended injections to treat the pain, which Ms. Broussard declined.

The ALJ found that Ms. Broussard's allegations concerning the nature and extent of her conditions were not supported by the evidence in the record and were not fully credible.  Great deference is given to an ALJ's credibility determinations.[95]

Additionally, "[a] medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling."[96]  The record contains no surgical recommendation for any of Ms. Broussard's conditions, but, to the extent that any of Ms. Broussard's conditions can be improved with treatment or medication, they are not disabling.

If a claimant fails to follow the treatment prescribed by her physician, she will not be found disabled so long as the record does not excuse the lack of treatment or otherwise support disability.[97]  In other words, a "treatable condition which a claimant

---

[95]     *Spruill v. Astrue*, 299 Fed. App'x 356, 358 (5th Cir. 2008);  *Newton v. Apfel*, 209 F.3d at 459.

[96]     *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987).

[97]     20 C.F.R. § 404.1530; *Villa v. Sullivan*, 895 F.2d at 1024.

declines or refuses to treat is not disabling."[98]  Dr. Johnston diagnosed Ms. Broussard

with conditions of the neck and low back for which he recommended epidural or facet

injections to control her pain.   She declined the injections.   First, Dr. Johnston

reported that Ms. Broussard was afraid of the recommended treatment, stating that

"she basically has a phobia about needles and is tearful in the office today when we

discussed it."[99]   Dr. Johnston offered to administer the injections with conscious

sedation, but she still declined to have the procedure.[100]   Later, he reported that she

stated that the proposed treatment was cost prohibitive.[101]   When a claimant's lack of

treatment is explained by an inability to afford medical care, the claimant's lack of

treatment should not be used to establish that she is not disabled.[102]

In this case, although Ms. Broussard declined to comply with the recommended

treatment, Dr. Johnston found that she remained capable of performing light work.

Therefore, there is no basis on which to conclude that Ms. Broussard's decision not

to receive the recommended injections justifies a finding that her neck and back pain

---

[98]     *Mosby v. Apfel*, No. 99-1031, 2000 WL 174897, at *4 (E.D. La. Feb. 14, 2000).  See,
also, *Johnson v. Bowen*, 894 F.2d 683, 685 n. 4 (5th Cir. 1988) (an individual who fails to follow a
prescribed treatment regimen will not be found disabled).

[99]     Rec. Doc. 11-1 at 182.

[100]    Rec. Doc. 11-1 at 183.

[101]    Rec. Doc. 11-1 at 184, 185, 186.

[102]    *Sanders v. Apfel*, 136 F.3d 137, at *1 (5th Cir. 1998) (*per curiam*).

are disabling.  However, Ms. Broussard failed to prove that her chronic back and neck pain is disabling.

Ms. Broussard is treating her fibromyalgia with Dr. Williams and Dr. Lipstate. They have prescribed various medications for her, including pain medication. Despite having been prescribed an array of medication, Ms. Broussard has described her pain as constant and severe on some occasions but has also described it as intermittent and mild or moderate.  Neither Dr. Lipstate nor Dr. Williams has opined on Mr. Broussard's ability to perform the tasks necessary to her past work.  That being the case, the ALJ was required to make a credibility finding, keeping in mind Dr. Johnston's recommendation of light work.  The ALJ has the sole responsibility for determining a claimant's disability status.[103]  He also has the sole responsibility for determining a claimant's residual functional capacity.[104]  Moreover, the claimant bears the burden of proof at this step of the evaluation.  Therefore, the fact that only Dr. Johnston has opined on Ms. Broussard's functional analysis is a failure on her part, and not on the part of the ALJ.

In this case, the ALJ's residual functional capacity evaluation is supported by substantial evidence in the record:  an ability to dress herself, shower and take care

---

[103]     *Newton v. Apfel*, 209 F.3d at 455.

[104]     *Taylor v. Astrue*, 480 Fed. App'x 302, 304 (5th Cir. 2012) *(per curiam)*, citing *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).

of all of her personal hygiene needs, and cook small meals,[105] together with Dr. Johnston's assessment that she can perform light work.  Ms. Broussard's complaints concerning shortness of breath were not borne out by objective testing.  The record does not contain any specific opinions from treating or examining physicians, based on objective evidence, indicating that Ms. Broussard has limitations greater than those determined by the ALJ.  The lack of physician-imposed restrictions inconsistent with medium work (other than Dr. Johnston's analysis) rebuts Ms. Broussard's alleged inability to work[106] and supports the conclusion that she is capable of performing her past relevant work.  Therefore, the undersigned finds that the ALJ's credibility determination is supported by substantial evidence.

Because the ALJ reviewed all of the relevant evidence, made credibility determinations, and explained his reasons for discounting some of the evidence in the record, his determination should not be second-guessed.[107]  Although Ms. Broussard disagrees with the ALJ's assessment of her impairments and her ability to perform her

---

[105]    Rec. Doc. 11-1 at 44.

[106]    *Hollis v. Bowen*, 837 F.2d 1378, 1387 (5th Cir. 1988).

[107]    *Price v. Astrue,* 401 Fed. App'x 985, 987 (5th Cir. 2010).

former job, it is not the function of the undersigned to "reweigh the evidence in the record."[108]

Consequently, the undersigned finds that the ALJ properly evaluated Ms. Broussard's residual functional capacity and further finds that his conclusion that Ms. Broussard retains the capacity to perform her past relevant work is supported by the evidence in the record.

## D.   WHETHER MS. BROUSSARD HAS A LISTED IMPAIRMENT.

Ms. Broussard disagrees with the ALJ's finding that she does not have a condition that meets or equals a listed impairment.  However, she does not suggest which listing she satisfies; she merely argues that she "didn't meet severity criteria on the list of impairment [but] I assume I meet them now."[109]  A disability finding cannot be based on assumptions, but must instead be based on proof.  Ms. Broussard's argument does not satisfy her burden of proving that she meets the criteria of a listing.  Therefore, this argument lacks merit.

---

[108]    *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

[109]    Rec. Doc. 23 at 2.

E.    THE SIDE EFFECTS OF HER MEDICATION.

Ms. Broussard argues that she is unable "to work with all the medications that I was on then and [am] currently taking now."[110]  At the hearing, she testified that "I don't know how they can expect me to work under all this medication that I'm on and function in a daily capacity like my normal self."[111]  She also said, "They can tell that I'm on the medication."[112]  The undersigned interprets this to mean that she is complaining about side effects from the medication that she is taking.  But the treatment notes in the record contain no complaints by Ms. Broussard to any doctor about the side effects of her medication, and none of her doctors have opined that the drugs she is taking prevent her from concentrating at work or otherwise performing assigned work tasks proficiently.  Therefore, this argument lacks merit.

F.    THE OPPORTUNITY TO BE EVALUATED BY A SOCIAL SECURITY DOCTOR.

Ms. Broussard argues that she has been prejudiced because she was not afforded an opportunity to be evaluated by a physician selected by the Social Security Administration.  But the burden of proof at the first four steps of the sequential analysis are on the claimant.  The claimant has the burden of proving her disability

---

[110]    Rec. Doc. 23 at 2.

[111]    Rec. Doc. 23 at 52.

[112]    Rec. Doc. 23 at 53.

by establishing a physical or mental impairment.  If the claimant provides insufficient medical or other evidence to permit the ALJ to make a decision, the ALJ can order a consultative examination in order to develop a full and fair record.[113]  Whether to order a consultative examination is within the ALJ's discretion.[114]

In this case, the ALJ had before him medical records from several doctors covering a multi-year time period and addressing each of Ms. Broussard's claimed medical conditions and more.  After the hearing, the ALJ held the record open to allow Ms. Broussard to supplement the record, which she did.  For example, the record contains information from Dr. Lipstate dated more than a year after the hearing was held.  Consequently, the undersigned finds that the ALJ's decision not to obtain a consultative examination of Ms. Broussard was not an abuse of discretion.

## CONCLUSION AND RECOMMENDATION

There is no evidence that the ALJ applied inappropriate legal standards in ruling on this case, and the ALJ's decision is based on substantial evidence in the record.  Ms. Broussard failed to prove that she is disabled.  Accordingly,

---

[113]    *Pearson v. Bowen*, 866 F.2d 809, 812 (5th Cir. 1989).

[114]    *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989); *Pearson v. Bowen*, 866 F.2d at 812.

**IT IS THE RECOMMENDATION** of the undersigned that the decision of the Commissioner be **AFFIRMED** and that this matter be **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 6th day of November 2014.

PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

COPY SENT:

-31-

DATE:   11/6/2014
BY:          EFA
TO:          RTH

pj